NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

IN RE EMMA R.

No. 1 CA-JV 19-0349
FILED 4-2-2020

---

Appeal from the Superior Court in Coconino County
No. S0300JV201900047
The Honorable Margaret A. McCullough, Judge

**AFFIRMED**

---

COUNSEL

Coconino County Public Defender's Office, Flagstaff
By Sandra L. J. Diehl
*Counsel for Appellant*

Coconino County Attorney's Office, Flagstaff
By Erin Anding
*Counsel for Appellee*

---

**MEMORANDUM DECISION**

Judge Michael J. Brown delivered the decision of the Court, in which Presiding Judge Jennifer B. Campbell and Judge Lawrence F. Winthrop joined.

---

**B R O W N**, Judge:

**¶1** Emma R. appeals the juvenile court's disposition ordering her to complete 12 months of Juvenile Intensive Probation Supervision (JIPS). Emma's counsel filed a brief in accordance with *Anders v. California*, 386 U.S. 738 (1967), *State v. Leon*, 104 Ariz. 297 (1969), and *Maricopa County Juvenile Action No. JV-117258*, 163 Ariz. 484 (App. 1989), advising this court that after a diligent search of the record, counsel has found no arguable question of law that was not frivolous. After reviewing the record, we affirm.

**¶2** In March 2019, Emma was charged with possession of drug paraphernalia and possessing alcohol as a minor. At the advisory hearing, the juvenile court ordered Emma to obey all laws; attend school as directed by the high school she was attending; check in with probation as requested by probation; follow a 6:00 p.m. curfew with probation having discretion to modify curfew based on her work schedule; and submit to urinalysis ("UA") testing. At Emma's request, the court continued the hearing until May, at which time she admitted possessing drug paraphernalia, and the State agreed to dismiss the alcohol charge. The court determined there was a factual basis for Emma's admission and found her delinquent. The court amended prior release conditions, ordering that Emma attend school five days a week and check in with the probation officer at least once a week.

**¶3** At the June 2019 disposition hearing, the probation officer informed the juvenile court that Emma had recently received a referral for unlawful consumption of alcohol. The court imposed probation for 12 months under the standard terms and conditions and ordered Emma to continue living with her mother. Several weeks later, however, the State requested a review hearing based on concerns raised by Emma's behavior after the disposition hearing. At the review hearing, a probation officer reported that Emma admitted she consumed alcohol, tested positive for THC, and missed three appointments for her substance abuse screening.

**¶4**         At the August 2019 review hearing, a probation officer explained that when Emma went to the probation office to provide a UA sample, she inadvertently left her bag there; it contained a sharp knife, cigar tobacco, rolling papers, and paraphernalia.  The officer also reported that Emma was not performing her community service and forged one of the time logs.  The juvenile court ordered Emma to wear an electronic monitoring device.

**¶5**         At the beginning of the school year, Emma missed more school than she attended.  She also failed to consistently charge her monitoring device and violated curfew.  She was asked to leave her "Step-Up" class when she arrived unprepared, made a joke about smoking crack, and rolled her eyes at the probation officer conducting the class.  The juvenile court ordered that Emma be taken into custody and complete the "Positive People, Positive Places and Staying out of Trouble" plan.

**¶6**         Shortly thereafter, the State filed a petition to revoke Emma's probation, alleging six violations.  At the subsequent advisory hearing, Emma admitted to violating allegations two (testing positive for alcohol) and six (failing to keep her monitoring device charged), and the State dismissed the remaining allegations.  The juvenile court found that a factual basis existed for the admissions and determined Emma violated her probation.  The court found it appropriate that Emma remain in custody and gave the probation department discretion to release Emma when appropriate.

**¶7**         At the October 2019 disposition hearing, a probation officer explained that Emma had continued to act out.  She reportedly stole alcohol from a grocery store and had apparently done this several times.  She also had a positive UA.  Emma was suspended from school for calling classmates names and making them feel unsafe.  The juvenile court imposed JIPS for 12 months and ordered that Emma be taken into custody.  The court gave the probation department discretion to release Emma to the "Halo House."  Emma timely appealed the court's disposition order.

**¶8**         After a thorough review of the record, we find no reversible error.  *See JV117258*, 163 Ariz. at 488.  The record reflects Emma was present, in person or telephonically, and represented by counsel at all critical stages of the proceedings against her.  The proceedings were conducted in compliance with the Arizona Rules of Procedure for the Juvenile Court and Emma's constitutional and statutory rights.   The juvenile court's disposition order was within its authority because the court had the discretion to place Emma on supervised probation.  *See* A.R.S. § 8-

341(A)(1)(b); Ariz. R.P. Juv. Ct. 30(B)(3), 31(A). JIPS is "a program . . . of highly structured and closely supervised juvenile probation . . . which emphasizes surveillance, treatment, work, education and home detention." A.R.S. § 8-351. Under guidelines promulgated by our supreme court, imposition of JIPS is appropriate when the juvenile has been "adjudicated for delinquent acts or for violations of probation originating from a delinquent act." Ariz. Code of Jud. Admin. § 6-302(H)(3). Therefore, we affirm the court's order imposing JIPS.

¶9            After the filing of this decision, defense counsel's obligations pertaining to Emma's representation in this appeal have ended. Defense counsel only need inform Emma of the outcome of this appeal and her future options, unless, upon review, counsel finds an issue appropriate for submission to the Arizona Supreme Court by petition for review. *See State v. Shattuck*, 140 Ariz. 582, 584–85 (1984); Ariz. R.P. Juv. Ct. 107(A).

